IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

SHAINEY HARPOLE, Individually and on
behalf of HOLLIE GROTE deceased,


               Plaintiff,

    v.


PIKE COUNTY, MISSOURI,

      Serve: Pike County Clerk
      115 W. Main, Suite 23
      Bowling Green, MO 63334


PIKE COUNTY, MISSOURI SHERIFF'S
DEPARTMENT

      Serve: Pike County Sheriff's
      Department
      1600 Business Hwy 54 W.
      Bowling Green, MO 63334

STEPHEN KORTE,

      Serve: Pike County Sheriff's
      Department
      1600 Business Hwy 54 W.
      Bowling Green, MO 63334


ALAN WEAVER, M.D.

      Serve: Registered agent
      CT Corporation System
      120 South Central Avenue
      Clayton, MO 63105

DEBBIE WELCH,
      Serve: Pike County Jail
      1600 Business Hwy 54 W.
      Bowling Green, MO 63334

CORINA HALBACH,

    Serve: Pike County Jail
    1600 Business Hwy 54 W.
     Bowling Green, MO 63334

TYLER TROWBRIDGE

    Serve: Pike County Jail
    1600 Business Hwy 54 W.
    Bowling Green, MO 63334

ADVANCED CORRECTIONAL
HEALTHCARE, INC.,

    Serve:  Registered agent
    CT Corporation System
    120 South Central Avenue
    Clayton, MO 63105

Defendants.

## FIRST PETITION FOR DAMAGES

COMES NOW, Plaintiff, Shainey Harpole, Individually and on behalf of Hollie Grote, deceased, and for her Complaint against the Defendants who are sued in their individual and official capacities states the following:

## STATEMENT OF CASE

1.      Hollie Grote was detained at Defendant Pike County's Pike County Jail and held as an inmate from June 2021 until her death in October 2021. Beginning in early July, 2021, Ms. Grote's health and physical condition began to visibly and conspicuously deteriorate. Despite Ms.

1

Grote's repeated complaints about her pain and symptoms to Pike County and Advanced Correctional Healthcare, Inc.'s ("ACH") correctional and medical staff, despite the complaints from Ms. Grote's family members expressing concern for Ms. Grote's wellbeing, despite the repeated attempts from Ms. Grote's cellmates to get correctional officers to help Ms. Grote, and despite the clear and obvious deterioration in Ms. Grote's condition, ACH and Pike County and their employees failed to provide Ms. Grote with proper or adequate medical care and treatment. Instead, in the face of Ms. Grote's desperate pleas for care and disturbing complaints made to jail personnel—such as blurring of vision coupled with black and gray spots in field of vision, the inability to sleep except for when sitting in an upright position, pain in the head so bad as to trigger crying and to necessitate laying on the floor in the fetal position, and claims that killing herself would be the only way to alleviate her pain—ACH and Pike County's healthcare staff provided only Tylenol. All the while, Ms. Grote was suffering from an undiagnosed, progressively debilitating, but highly treatable non-cancerous brain tumor. After Ms. Grote was ignored in her pleas for medical attention and pleas to go to the emergency room, ultimately, she would die as a direct result of being ignored and untreated.

2.      Hollie Grote's death was not sudden, quick, painless, or unexpected. Instead, for months leading up to her death Ms. Grote experienced serious, obvious, and escalating symptoms to the point where she could not function. During her final months, it was obvious to everyone who encountered her—inmates, correctional officers, and healthcare staff— as well as to her loved ones, that Ms. Grote was seriously ill and in extreme distress. Ms. Grote complained daily for months and with increasing desperation. On September 3, 2021, Ms. Grote submitted a grievance to express her concern that "I could die if I don't get the proper tests or healthcare;" on October 1, 2021, Ms. Grote submitted a grievance in which she wrote "when I do die from the amount of

neglect here... at least my family can sue you." These are just a few of the many complaints and medical requests that Ms. Grote submitted. Instead of sending Ms. Grote to an emergency room, hospital, ordering further tests jail medical staff's only "treatment" was Tylenol. As her condition deteriorated, Ms. Grote begged to be taken to see a "real doctor," someone who would listen to her symptoms and diagnose the underlying problem, yet no one at Pike County Jail allowed her to go to outside emergency or specialist services for care at any point during her detainment.

3.    The day before her death, Ms. Grote engaged in self-harm and expressed a desire to kill herself rather than continue to endure the pain she was experiencing. However, rather than seek medical attention to address the pain that caused such actions and statements, correctional officer Defendant Corina Halbach placed Ms. Grote on suicide watch and transported her to an isolated holding cell—instead of to the infirmary, to a doctor, or to a hospital. At that time Defendant Corina Halbach observed and noted Ms. Grote was "laying on the floor and seems like she can't think." At midnight that night, correctional officer Tyler Trowbridge observed that Ms. Grote could only grunt in response to questions. About 7 hours later, on October 24, 2021, Ms. Grote was found dead in her cell. The autopsy identified her cause of death as increased cranial pressure resulting from the growth of a benign meningioma.

4.    Prior to Ms. Grote's death, her family personally visited Pike County Sheriff Stephen Korte and requested that he send her to a hospital. During this meeting, Stephen Korte denied the family's request, including the request of Plaintiff Harpole, Hollie Grote's daughter. Further, Defendant Sheriff Stephen Korte told Ms. Grote's family that he would only send an inmate to the hospital if that inmate was "bleeding out" or vomiting.

5.    Accordingly, Plaintiff Shainey Harpole, individually and on behalf of Hollie Grote (decedent), now brings claims against the above named Defendants for violations of Hollie Grote's

rights as secured by the Eighth and Fourteenth Amendments to the Constitution of the United States of America, cognizable pursuant 42 U.S.C. § 1983 and 1988, and Missouri state law, including state claims for negligence, wrongful death, and negligent infliction of emotional distress. Further, Plaintiff Shainey Harpole, individually and on behalf of Hollie Grote, now brings claims against Defendant Pike County, Missouri and certain officers and officials under theories of municipal liability ("*Monell*" liability), for maintaining unconstitutional policies, practices, and customs as well as for failures to train, supervise, and/or discipline its employees.

## JURISDICTION AND VENUE

6.     This Court has personal jurisdiction over the parties.

7.     Venue is proper to this Court, pursuant to Mo. Rev. Stat. § 105.055, which provides that "[a] civil action commenced pursuant to this subsection may be brought in the circuit court for the county where the alleged violation occurred, the county where the complainant resides, or the county where the person against whom the civil complaint is filed resides" and the violations alleged herein occurred within the geographical boundaries of Pike County, Missouri.

## PARTIES

8.     Plaintiff Shainey Harpole (hereinafter "Plaintiff Harpole") is and was at all times relevant herein a citizen of the United States of America and was a resident of the State of Missouri. Further, Plaintiff Harpole is the daughter of Hollie Grote and therefore the appropriate party to bring this action.

9.     Defendant Advanced Correctional Healthcare, Inc. (hereinafter "ACH") was, and is, a corporation authorized to do business within Pike County, Missouri. ACH regularly conducts business in Pike County, Missouri in conjunction with Defendant Pike County.

10.     Upon information and belief, and at all relevant times contemplated herein, ACH reached a meeting of minds and/or mutual understanding, orally and/or in writing, with Pike County to recruit, contract, employ, train, compensate, and supervise medical professionals to provide services including, but not limited to, examinations, treatments, and care for all of the inmates housed at Pike County Jail at least between November 2012 and all times relevant to this lawsuit. Accordingly, ACH was a willing participant with Pike County and/or its agents in the joint action that violated Ms. Grote's Eighth and Fourteenth Amendment rights under the Constitution of the United States and thus qualifies as a state actor acting under the color of law for the purposes of this lawsuit under 42 U.S.C. § 1983.

11.     Defendant Pike County, Missouri (hereinafter "Pike County") is a body politic, municipal corporation and/or political subdivision of the State of Missouri, organized and existing pursuant to the Missouri Constitution and State Law. Defendant Pike County operates with authority over the Pike County Sheriff Department and Pike County Jail.

12.     Defendant Pike County Sheriff's Department, Missouri (hereinafter "Pike Sheriff") is a body politic, municipal corporation, and/or political subdivision of the State of Missouri, organized and existing pursuant to the Missouri Constitution and state law. Defendant Pike Sheriff operates the Pike County jail and provides healthcare services to inmates.

13.     Defendant Stephen Korte (hereinafter "Defendant Korte") is and was at all times relevant herein a citizen of the United States of America. Defendant Korte is the sheriff of Pike County, Missouri, and thus has the final policymaking authority and obligation to train employees of the Polk County Jail. For purposes of Plaintiff's federal claims, Defendant Korte is named in his individual capacity.

14. Defendant Corina Halbach (hereinafter "Defendant Halbach") is and was, at all times relevant hereto, a citizen of the United States employed at Pike County Jail. Defendant Halbach is a correctional officer and assistant jail administrator. At all times relevant hereto, Defendant Halbach was acting under color of state law and authority of her position with Defendant Pike County. For purposes of Plaintiff's federal claims, Defendant Halbach is named in her individual capacity. As sheriff, Defendant Korte was a willing participant with ACH and Pike County during all relevant times to this lawsuit and thus qualifies as a state actor acting under the color of law for the purposes of this lawsuit under 42 U.S.C. § 1983.

15. Defendant Alan Weaver (hereinafter "Defendant Weaver") is and was, at all times relevant hereto, a citizen of the United States employed by Advanced Correctional Healthcare at Pike County Jail. Defendant Weaver was, at all times relevant hereto, a physician at Pike County Jail. In Defendant Weaver's capacity as an employee or contractor for ACH and/or Pike County, Defendant Weaver did provide medical services, or lack thereof, including, but not limited to, examinations, treatment, and care for inmates housed at Pike County Jail—including Ms. Grote— during all relevant times to this lawsuit. Accordingly, Defendant Weaver was a willing participant with ACH and Pike County and/or their agents in the joint action that violated Ms. Grote's constitutional right and thus qualifies as a state actor acting under the color of state law for the purposes of this lawsuit under 42 U.S.C. § 1983.

16. Defendant Debbie Welch (hereinafter "Defendant Welch) is and was, at all times relevant hereto, a citizen of the United States employed at the Pike County jail. At present, this individual has yet to be identified by name but was, at all times relevant hereto, acting under color of state law and authority of their position with Defendant Pike County. In her capacity as a licensed practical nurse at Pike County Jail, Defendant Welch did provide medical services, or

6

lack thereof, including, but not limited to, examinations, treatment, and care to inmates housed at Pike County Jail—including Ms. Grote—at all times relevant to this case. Accordingly, Defendant Welch was a willing participant with ACH and Pike County and/or their agents in the joint action that violated Ms. Grote's constitutional right and thus qualifies as a state actor acting under the color of state law for the purposes of this lawsuit under 42 U.S.C. § 1983.

17.     Defendant Tyler Trowbridge (hereinafter "Defendant Trowbridge") is and was, at all times relevant hereto, a citizen of the United States employed at Pike County Jail. Defendant Trowbridge is a correctional officer at Pike County Jail. At all times relevant hereto, Defendant Trowbridge was acting under color of state law and authority of his position with Defendant Pike County. For purposes of Plaintiff's federal claims, Defendant Trowbridge is named in his individual capacity.

## ALLEGATIONS COMMON TO ALL COUNTS

18.     At some point prior to November 2012, ACH reached a mutual understanding with Pike County to recruit, employ, train, compensate, and supervise medical professionals to provide medical services including, but not limited to, examinations, treatment, and care for all inmates housed at Pike County Jail, and this mutual understanding was ongoing during all times relevant to this lawsuit.

19.     At all times relevant to this complaint, Defendant Debbie Welch was an agent or employee of ACH.

20.     At all times relevant to this complaint, Defendant Alan Weaver, M.D., was an agent or employee of ACH.

21.     At all times relevant to this complaint, Defendant Corina Halbach was an agent or employee of Pike County and a correctional officer for Pike County Sheriff's Department.

22.    At all times relevant to this complaint, Defendant Tyler Trowbridge was an agent or employee of Pike County and a correctional officer for Pike County Sheriff's Department.

23.    On or about June 18, 2021, Hollie Grote was placed in detention at Pike County Jail.

24.    Ms. Grote was held in detention at Pike County Jail for a period of approximately four months, from approximately June 18, 2021, until her death on or about October 24, 2021.

25.    On information and belief, less than one month into her detention, at approximately the beginning of July 2021, Ms. Grote's health began to decline to an extent noticeable to herself, her cellmates, correctional officers, and medical staff.

26.    Beginning in approximately early July 2021, Ms. Grote began exhibiting symptoms of illness including blurred vision and gray spots in vision, persistent headaches, pain, and dizziness.

27.    During a medical appointment on July 7, 2021, Ms. Grote was prescribed 1000mg of Tylenol to be provided by jail staff once daily.

28.    Throughout July 2021, Ms. Grote's condition symptoms worsened, as in a medical visit on July 27, 2021, Ms. Grote presented symptoms to a corrections officer including one of her eyes drooping, memory loss, blurred vision, increased frequency and intensity of headaches, the onset of hot and cold flashes, and sudden and random onsets of disorientation and the inability to speak.

29.    After July 2021, Ms. Grote's condition further worsened.

30.    Throughout the month of August 2021, Ms. Grote submitted at least five written requests to meet with the jail's medical staff, as well as requests to meet with outside providers.

31.     During a medical visit with Defendant Welch on or about August 13, 2021, Ms. Grote reported "spells" of hot and cold flashes, tunnel vision, and the inability to speak or focus.

32.     During a medical visit with Defendant Welch on or about August 27, 2021, Ms. Grote reported concern that she suffered a stroke, with symptoms including severe headaches, her right eye watering and drooping suddenly, and constant dizziness.

33.     On or about August 25, 2021, Ms. Grote submitted a request to meet with "an actual doctor or hospital to be tested, possibly for blood clots, I'm not sure but my blood pressure is not the only problem I have been having but it is still very high sometimes and it is not due to anxiety."

34.     On or about September 3, 2021, Ms. Grote submitted a grievance in which she complained of that jail staff were not documenting Ms. Grote's blood pressure. Grote's complaint of failed documentation was substantiated by Defendant Welch.

35.     In the September 3, 2021 grievance, Ms. Grote also complained of Defendant Welch's unwillingness to help Ms. Grote and requested that someone investigate Defendant Welch and Ms. Grote again expressed her extreme concern about her health, saying that "I am just feeling extremely concerned for what could happen at any time. I could die if I don't get the proper tests or healthcare."

36.     During a medical visit with Defendant Welch on or about September 17, 2021, Ms. Grote reported constant flashes of light in her vision, constant double vision, and worsening of the black spots in her vision; Defendant Welch did not change Ms. Grote's care plan.

37.     On or about October 1, 2021, Ms. Grote submitted a grievance in which she expressed certainty that she would die due to the medical neglect she was facing, writing "when I do die from the amount of neglect here...at least my family can sue you."

9

38.     During a medical visit with Defendant Welch on or about October 15, 2021, Ms. Grote complained of chest pain in addition to her other ongoing symptoms.

39.     Defendant Alan Weaver, M.D. reviewed and signed off on all of the aforementioned visits between Ms. Grote and Defendant Welch.

40.     Three days before her death, on October 21, 2021, correctional officer Michael Orchowske submitted an illness report on behalf of Ms. Grote in which he documented Ms. Grote's continued complaints of blurred vision and headaches.

41.     On October 23, 2021, at approximately 8:42 a.m. Ms. Grote complained to Defendant Halbach of continued debilitating head pains, and Defendant Halbach conducted a medical protocol on Ms. Grote for her headaches and high blood pressure.

42.     On October 23, 2021, at approximately 9:21 a.m. Defendant Halbach called Defendant Weaver and Defendant Weaver advised Defendant Halbach to give Ms. Grote 1000 mg of Tylenol twice daily for three days and to keep Ms. Grote away from light and sound.

43.     Less than four hours later, at approximately 1:00 p.m., Ms. Grote complained to Defendant Halbach that her pain was so bad that she wanted to kill herself rather than continue to endure it.

44.     In response to Ms. Grote's comments, Defendant Halbach placed Ms. Grote on suicide watch and moved her to a holding cell where she was housed alone.

45.     Upon information and belief, Defendant Halbach did not contact the sheriff or medical staff to inform them of Ms. Grote's "suicidal" statements.

46.     Defendant Halbach also failed to contact emergency services.

47.    At approximately 7:38 p.m. on October 23, 2021, after Ms. Grote was placed in the suicide watch cell, Defendant Trowbridge visited Ms. Grote's holding cell in order to complete medicine pass.

48.    When Defendant Trowbridge extended Ms. Grote's medication to her, she lost balance and nearly fell to the floor.

49.    On October 24, 2021, at approximately 12:48 a.m., Defendant Trowbridge was sent to do a physical checkup on Ms. Grote due to her laying "weirdly" in her cell; during this checkup Defendant Trowbridge asked Ms. Grote if she was okay and she only grunted in response.

50.    Defendant Trowbridge did not contact emergency services.

51.    Only seven hours later, at approximately 7:30 a.m. on October 24, 2021, Defendant Halbach found Ms. Grote unresponsive in her cell.

52.    Emergency Medical Services was finally called, arrived and attempted life-saving measures, but to no avail as Ms. Grote was declared dead at 7:55 a.m. on October 24, 2021.

53.    The Pike County coroner found that Ms. Grote's death was caused by intercranial pressure or brain swelling caused by the growth of a benign meningioma or noncancerous brain tumor.

54.    The Pike County Officer of Medical Examiner, by and through Keith Norton, M.D. reported Ms. Grote's medical history in the jail to complaints and observations of: hypertension and complaints of headaches (some changing with position), visual changes, "zoning out," memory loss, drooping eyelid, double vision, seeing flashing lights, an explosive temper, a severe pulling pain in one eye, and occasional "spells" of inability to speak, tunnel vision, and confusion lasting hours.

11

55.     Even though corrections staff knew and/or should have known of Ms. Grote's serious need for medical attention, they failed to provide her with adequate and timely medical care, including but not limited to contacting jail nursing or medical staff or contacting emergency services before Ms. Grote's untimely death.

56.     Prior to Ms. Grote's death, Ms. Grote's cellmates Barbara Baur and Shannon Jennings repeatedly took it upon themselves to attempt to help alleviate Ms. Grote's symptoms when their calls to correctional officers yielded no improvements in Ms. Grote's care.

57.     Prior to Ms. Grote's death, members of Grote's family personally visited Pike County Sheriff, Defendant Stephen Korte and requested that he send her to a hospital; during this meeting, Defendant Korte denied the family request[1].

58.     Further, Defendant Korte told Ms. Grote's family that he would only send an inmate to the hospital if that inmate was visibly "bleeding out" or "vomiting"[2].

59.     At no point during her detention at Pike County Jail was Ms. Grote referred to specialist care, sent to outside medical providers, to the hospital or emergency room.

60.     Based on Ms. Grote's condition and the repeated requests by MS. Grote, her family and other inmates, Defendants were aware that Ms. Grote was suffering from an objectively serious medical need and that she was not receiving adequate treatment for it.

61.     Defendants intentionally, willfully, maliciously, and while acting under the color of state law, showed a deliberate indifference to Ms. Grote's medical needs, in that they had actual knowledge of her poor health, obvious to a layperson, and did not provide appropriate medical

---

[1] https://fox59.com/news/national-world/missouri-inmate-cried-for-medical-care-for-months-before-dying-from-brain-tumor-report/
[2] Id

treatment or allow her contact with anyone who could provide proper and/or adequate medical treatment.

62.     Defendants employed policies and procedures and customs promulgated by them, ACH, and Pike County, Missouri that insufficiently provided obviously necessary medical treatment to Ms. Grote and violated her civil rights.

63.     Defendants ACH, Pike County, and Korte enacted inadequate policies and did not train, supervise and discipline its employees to ensure existing policies were followed to benefit the health and welfare of Ms. Grote.

64.     Defendants acted individually and/or in concert with one another to deprive Ms. Grote of appropriate medical care, to which she is entitled under the Eighth and Fourteenth Amendments to the Constitution and 42 U.S.C. § 1983.

65.     As a direct and proximate cause of Defendants' negligence and deliberate indifference, Plaintiff Harpole suffered a loss of her beloved mother.

66.     As a direct and proximate result of the actions of all Defendants described above and pursuant to § 537.090 RS Mo., Plaintiff has damages as follows: damages that decedent Ms. Grote suffered between the time of onset of her symptoms at approximately the beginning of July 2021, to her death on or about October 24, 2021, and for the recovery of which the decedent might have maintained an action had death not ensued; pecuniary loss suffered by reason of the death of Ms. Grote; funeral expenses; and a reasonable value of the companionship, comfort, instruction, guidance, support and motherly love of which the Plaintiff has been deprived by reason of the death of Ms. Grote.

67.     All of the aforementioned actions demonstrate that Defendants' actions were reckless and/or callously indifferent to Ms. Grote's rights so as to justify consideration by the trier of fact of aggravating circumstances in determining the amount of damages to be allowed.

68.     Plaintiff is entitled to compensation for violations of Ms. Grote's constitutional rights that all Defendants inflicted upon her, including, but not limited to all damages allowable for wrongful death pursuant to § 537.080 RS Mo; pain and suffering before death; attorney's fees; and punitive damages.

### COUNT I
### <u>Failure to Provide Adequate Medical Care in violation of the Eighth and Fourteenth Amendments to the U.S. Constitution, Cognizable Under 42 U.S.C. § 1983</u>
*Against Defendants Korte, Halbach, Trowbridge, Welch, and Alan Weaver, each in their individual capacities*

69.     Plaintiff hereby incorporates by reference the allegations made in each preceding paragraph as if each were set forth herein.

70.     Throughout her time at Pike County Jail, Ms. Grote suffered from a serious medical need, which would be identified in her autopsy as a benign meningioma.

71.     Ms. Grote's symptoms were indicative of a serious health condition, aligned exactly with the most common symptoms of persons with developing brain tumors, and were recognized by laypersons, correctional officers, and medical personnel at Pike County Jail.

72.     The individual Defendants were made aware of Ms. Grote's serious medical need through multiple avenues, including but not limited to Ms. Grote's written complaints and medical requests, Ms. Grote's verbal complaints, Ms. Grote's family's calls and in-person meetings with Defendants, and Ms. Grote's cellmates' requests for help.

73.     Defendants were aware of Ms. Grote's symptoms prior to her death on October 24, 2021.

14

74. Defendants should have been aware that to deny Ms. Grote adequate medical care for her serious condition was to deny Ms. Grote her Constitutional rights secured by the Eighth and Fourteenth Amendments to the United States Constitution.

75. In committing the acts alleged herein, Defendants acted willfully, recklessly, maliciously, and with deliberate indifference to Ms. Grote and her serious medical needs and need for medical care.

76. Defendants were acting under color of State law when they acted deliberately indifferent towards Ms. Grote and denied Ms. Grote of her Constitutional right to adequate medical care.

77. As a direct and proximate result of the acts and omissions of Defendants, while acting alone and/or in concert with others and with deliberate indifference to Ms. Grote's rights and serious medical needs, Ms. Grote suffered severe and devastating damages and injuries, prior to her death, including, but not limited to, intense physical pain, the inability to get requested relief or assistance, suffering, and emotional distress.

78. As the direct and proximate result of the acts and omissions of Defendants, while acting alone and with deliberate indifference to Ms. Grote's rights and serious medical needs, Plaintiff Harpole has been deprived of Ms. Grote's companionship, comfort, advice, support, love, and affection.

79. The conduct of Defendants, as alleged herein, was wanton, willful, undertaken with evil motives, and/or displayed a deliberate indifference to Ms. Grote's constitutional rights, privileges and immunities, thereby justifying the award of punitive damages against each individual Defendant, in his or her individual capacity, in an amount sufficient to punish and deter Defendants and others from engaging in like misconduct in the future.

15

80.    As a result of Defendants' unlawful actions and infringements of her protected rights, Plaintiff has been compelled to retain counsel in this matter and is therefore entitled to a recovery of attorney's fees and legal costs pursuant to 42 U.S.C. § 1988.

**COUNT II**
**<u>Wrongful Death</u>**
***Against All Defendants***

81.    Plaintiff hereby incorporates by reference all the allegations made in each preceding paragraph as if each were set forth herein.

82.    Ms. Grote had objectively serious medical symptoms which required immediate medical treatment.

83.    Defendants owed a duty to ensure the safety of inmates at Pike County Jail, including Ms. Grote. This duty included providing proper medical care to maintain Ms. Grote's health.

84.    Defendants' actions were in violation of the duty owed to Ms. Grote to ensure her basic welfare.

85.    As a direct and proximate result of Defendants' actions, Ms. Grote was deprived of potentially life-saving medical interventions and experienced injuries, was caused to suffer mental and physical anguish, and loss of life.

86.    Plaintiff is entitled to recover damages from Defendants according to 537.080 RSMo. for the wrongful injuries and death of Ms. Grote, including special damages for her funeral and burial.

**COUNT III**
**<u>Medical Negligence</u>**
***Against Defendants Weaver, Welch, and ACH***

87.    Plaintiff hereby incorporates by reference all the allegations made in each preceding paragraphs as if each were set forth herein.

16

88.    A patient-physician relationship existed between (i) Defendant Weaver (as Ms. Grote's physician), Defendant Welch (as Ms. Grote's nurse), ACH (as the entity responsible for providing medical care to Ms. Grote) and (ii) Ms. Grote, and they owed Ms. Grote a duty to provide medical care using the degree of skill and learning ordinarily used under the same and/or similar circumstances by members of the medical profession while Ms. Grote was an inmate at Pike County Jail.

89.    Defendant Weaver, as Ms. Grote's physician, was responsible for overseeing, reviewing, and/or authorizing the care that was provided to Ms. Grote and therefore had a legal obligation to protect Ms. Grote from injury.

90.    Defendant Weaver, Defendant Welch, Defendant Korte, and ACH breached their duties—multiple times and in multiple ways—and were therefore negligent towards Ms. Grote in the following respects including but not limited to:

   a)  Failing to diagnose or otherwise treat an obviously serious medical condition;

   b)  Failing to provide medical judgment and care that would be ordered by outside treating physicians including, but not limited to, CT scans and MRIs, which, if provided, would have led to the treatment of Ms. Grote's noncancerous brain tumor;

   c)  Delaying care to or being non-responsive to urgent medical conditions that were known to jail staff including but not limited to, Ms. Grote's blurred vision, Ms. Grote's persistent headaches, and Ms. Grote's speech problems, which, if investigated, would have led to the diagnosis of Ms. Grote's brain tumor;

d) Failing to provide access to medical care including, but not limited to CT scans, MRIs, or emergency department care which, if provided, would have led to the diagnosis of Ms. Grote's brain tumor;

e) Providing medical care that fell significantly below the degree of skill and learning ordinarily used by other providers in Defendant Weaver and Welch's profession including failures to act on symptoms requiring further evaluation and treatment and/or schedule follow-up appointments for on-site and off-site care;

f) Refusing to provide pain relief beyond Tylenol;

g) Providing meager treatment below the standard of care in order to cut costs and save money for both Defendants Pike County and ACH;

h) Failing to conduct supervision over and/or review of the medical care provided to Ms. Grote at Pike County Jail.

91.    As a direct and proximate result of these defendants' negligence, Defendants failed to timely diagnose and treat Ms. Grote's brain tumor. Ms. Grote's brain tumor subsequently grew, increased her intercranial pressure, and ultimately led to her death caused by brain swelling.

92.    Had these defendants provided Ms. Grote with proper and timely medical care and had they allowed Ms. Grote to receive medical care from outside medical providers, Ms. Grote had a great chance of surgical care and prolonged survival. Plaintiff instead suffered great emotional and physical pain and ultimately a shortened lifespan with her untimely death at forty-one years old.

93.    Plaintiff is entitled to recover all applicable damages under Mo. Ann Stat § 538.205 including, but not limited to, damages related to her mother's pain and suffering, mental anguish, loss of capacity to enjoy life, and attorney's fees.

94.     Defendants' acts and omissions were intentionally wanton, willful, reckless, and malicious and evince a complete and deliberate indifference to and a conscious reckless disregard of Ms. Grote's rights. Therefore, Plaintiff is entitled to an award of punitive damages in an amount sufficient to punish Defendants and to prevent similar conduct in the future.

### COUNT IV

#### Negligence
#### *Against Halbach and Trowbridge*

95.     Plaintiff hereby incorporates by reference all the allegations made in each preceding paragraph as if each were set forth herein.

96.     As correctional officers, Defendant Halbach and Defendant Trowbridge were responsible for ensuring Ms. Grote's safety while on-duty. Defendants Halbach and Trowbridge are also responsible for following Polk County Jail's policies.

97.     Both Defendant Halbach and Defendant Trowbridge failed to ensure Ms. Grote's safety.

98.     Particularly, on October 23, 2021, when Ms. Grote complained of pain so bad that she would rather kill herself than continue to endure it, Defendant Halbach placed Ms. Grote on suicide watch. In doing so, she had Ms. Grote was moved to a holding cell where she was to remain entirely by herself.

99.     Polk County Jail has written policies of (i) reporting all suicidal threats and behaviors to the Sheriff immediately after they happen and (ii) transferring mentally ill inmates to mental health facilities rather than holding them at Polk County Jail.

100.    Upon information and belief, Halbach acted in disobedience of ministerial written policies at the jail.

101.    Additionally, in placing Ms. Grote on suicide watch, Defendant Halbach failed to identify and address what drove Ms. Grote's "suicidal" statements in the first place—her debilitating pain stemming from a serious medical need.

102.    By failing to contact medical personnel, which was her ministerial duty, the Sheriff, and/or emergency services, Defendant Halbach was negligent towards Ms. Grote.

103.    Additionally, during the night preceding Ms. Grote's death, Defendant Trowbridge acted with negligence towards Ms. Grote.

104.    On October 23, 2021, at approximately 19:48, Defendant Trowbridge approached Ms. Grote's holding cell to administer medication to her during med pass. During this encounter, Ms. Grote lost balance and nearly fell to the floor in front of Defendant Trowbridge.

105.    Later, at approximately 12:48 a.m. on October 24, 2021, Defendant Trowbridge was sent to Ms. Grote's cell to check on her because she was laying "weirdly" within her cell. When Trowbridge asked Ms. Grote if she was okay, she merely grunted in response. Defendant Trowbridge then left.

106.    During and after both of the aforementioned encounters, Defendant Trowbridge failed to contact jail medical staff or emergency services. Despite observing Ms. Grote unable to balance and unable to speak—Defendant Trowbridge did nothing to assist her.

107.    Defendants Halbach and Trowbridge knew or should have known that Ms. Grote needed emergency medical attention.

108.    Therefore, in failing to assist Ms. Grote in obtaining proper and timely medical care on October 23 and October 24, 2021, Defendants Halbach and Trowbridge were negligent towards Ms. Grote.

20

109.    As a result of these defendant's negligent actions and omissions, Ms. Grote was deprived of care in the final hours of her life.

110.    Ms. Grote's injuries were directly and/or proximately caused by this negligence.

**Count V**
**Unconstitutional Policy, Custom, and Failure to Train, Supervise, and Discipline,**
**Cognizable Under 42 U.S.C. § 1983**
***Against Pike County, ACH, Korte***

111.    Plaintiff hereby incorporates by reference all the allegations made in each preceding paragraph as if each were set forth herein.

112.    At some point prior to November 2012, ACH reached a mutual understanding with Pike County to recruit, employ, train, compensate, and supervise medical professionals to provide medical services including, but not limited to, examinations, treatment, and care for all inmates housed at Pike County Jail, and this mutual understanding was ongoing during all times relevant to this lawsuit.

113.    ACH and/or Pike County reached a mutual understanding with Defendant Weaver to provide medical services including, but not limited to, evaluations, diagnosis, treatment, and care to inmates housed at Pike County Jail, including Ms. Grote during all times relevant to this lawsuit.

114.    During Ms. Grote's time at Pike County Jail, ACH, Pike County, Defendant Weaver, and/or Defendant Korte had oversight and supervisory responsibilities over the Pike County Jail's medical policies, customs, procedures, and medical staff, including Defendant Welch.

115.    During Ms. Grote's time at Pike County Jail, Defendant Korte, in conjunction with ACH and its employees, had direct oversight responsibilities over ACH's and Pike County Jail's policies, customs, procedures and staff, with responsibilities related to addressing inmate

21

grievance and medical request submissions.

116. ACH's and Pike County's policies, procedures, customs, practices and actions—which, through the conduct and deliberate omissions of its employees and agents, including but not limited to Defendants Korte, Welch, Weaver, Halbach, and Trowbridge, were so widespread and persistent as to represent official policy—recklessly disregarded substantial risks of serious harm to inmates and inflicted injuries that are actionable under 42 U.S.C. § 1983.

117. ACH, Pike County, and Korte's collective abdication of policy-making and oversight responsibilities, and/or their inadequate policies, procedures, customs, practices, and actions—as well as their inadequate training, supervision, direction, and control that, if effective, would have eliminated those systemic deficiencies—reached the level of deliberate indifference and resulted in a constitutional injury manifesting itself in the unnecessary and wanton infliction of pain because of their collective and tacit authorization of personnel misconduct.

118. More specifically, the policies overseen by ACH, Pike County, and Sheriff Korte permitted with respect to Ms. Grote:

a)     Failure to provide a level and standard of care expected from medical professionals;

b)     Failure to provide access to outside medical care;

c)     Delays or non-responses to urgent conditions;

d)     Failure to assure staff competency, especially among physicians and nurses, including the establishment of policies, procedures, and processes to detect and respond to medical incompetency;

e)     Poor quality nursing care, including failures to note urgent conditions and schedule appropriate follow-up care

f)     Refusal to admit inmates to hospitals or other outside emergency care;

g)     Failures to provide inmates with qualified medical opinions.

119.     The systematic deficiencies listed above are the product of official policies, procedures, customs, practices, and actions that was promoted or tacitly authorized by ACH and Pike County personnel, and all of them contributed to the unconstitutional deliberate indifference to Ms. Grote's serious medical needs and the unnecessary pain that she experienced.

120.     The systematic deficiencies listed above evince the existing of a continuing, widespread, persistent pattern of unconstitutional misconduct by employees of both ACH and Pike County that constitutes deliberate indifference to or tacit authorization of such conduct by the policymakers.

121.     These policies, practices, customs, and procedures set forth by Defendants ACH, Pike County, and Sheriff Korte acted as moving forces behind Ms. Grote's injuries, operating to deprive Ms. Grote of her constitutional right to adequate healthcare. If not for these policies, she would not have been deprived of her Eighth Amendment rights.

122.     Collectively, Defendants ACH, Pike County, and Sheriff Korte's acts and omissions not only demonstrate a conscious disregard of the substantial risk of harm to inmate health and safety at their facility, but said acts and omissions are also sufficiently harmful as to demonstrate deliberate indifference towards Ms. Grote's serious medical needs and to the needs of other inmates to whom they have a duty

123.     Defendants ACH, Pike County, and Sheriff Korte's acts and omissions were intentionally willful, wanton, reckless, and malicious. They also evince a complete and deliberate indifference to and a conscious disregard of the rights of Ms. Grote who have Defendant Weaver and Defendant Welch as their primary providers of care.

124.    Based on these conditions, Plaintiff Harpole is entitled to recover her reasonable attorney fees, costs, and expenses from Defendants as provided by 42 U.S.C. §1988.

## Count VI
## Negligent Infliction of Emotional Distress
### Against Defendants Weaver, Welch, Korte, and ACH

125.    Plaintiff hereby incorporates by reference all the allegations made in each preceding paragraph as if each were set forth herein.

126.    Defendant Weaver, as Ms. Grote's physician, and Defendant Welch, as Ms. Grote's nurse, while Ms. Grote was housed at Pike County Jail, owed a legal duty to provide Ms. Grote adequate medical care and, in doing so, to protect her from injury.

127.    ACH and Defendant Korte were responsible for overseeing, reviewing, and tacitly approving and/or authorizing the care that was provided to Ms. Grote or that should be provided to Ms. Grote, and therefore owed a legal duty to protect Ms. Grote from injury.

128.    At minimum, ACH and Defendant Korte, as holders of supervisory power over the involved medical staff at Pike County Jail, are vicariously liable for Defendant Weaver and Defendant Welch's conduct that caused Ms. Grote's injuries, including the mental and emotional distress that was committed within their scope of employment under ACH and Pike County.

129.    Defendant Weaver, Defendant Welch, Defendant Korte, and ACH breached their duties—multiple times and in multiple ways—and were therefore inflicting emotional distress towards Ms. Grote in the following respects including, but not limited to:

a)    Delaying care to or being non-responsive to urgent and painful medical medical condition that were known to jail staff including but not limited to, Ms. Grote's blurred vision, Ms. Grote's persistent headaches, and Ms. Grote's speech problems, which, if investigated, would have led to the diagnosis and removal of Ms. Grote's noncancerous tumor;

b)    Refusing to provide pain relief and relief of Grote's serious and painful symptoms;

24

c)      Causing Ms. Grote to want to kill herself rather than bear anymore pain as a result of her lack of treatment.

130.    As a direct and proximate cause of these actions and omissions, Ms. Grote was caused for months to experience of extreme mental and emotional suffering and distress.

131.    Defendant Weaver and Defendant Welch as licensed medical professionals—should have realized their aforementioned conduct of failing to provide adequate medical care to Ms. Grote, failing to permit Ms. Grote to receive medical care from outside providers, and allowing Ms. Grote to suffer extreme and debilitating pain related to her brain tumor, involved unreasonable risk of causing distress.

132.    Indeed, the emotional distress suffered by Ms. Grote in her final months of life was medically diagnosable and was of sufficient severity to be medically sufficient.

133.    Plaintiff is entitled to damages including, but not limited to, damages related to pain and suffering, mental anguish, and the loss of ability to enjoy life as suffered by her mother Ms. Grote.

134.    Defendant Weaver, Defendant Welch, Defendant Korte, and ACH's acts and omissions were intentionally willful, wanton, reckless, and malicious and evince a complete and conscious and reckless disregard for the rights of Ms. Grote. Therefore, Plaintiff Harpole is entitled to an award of punitive or exemplary damages in an amount sufficient to punish these medical professionals and to deter others from engaging in similar conduct in the future.

## **INJURIES AND DAMAGES**

135.    Plaintiff hereby incorporates by reference all the allegations made in each preceding paragraph as if each were set forth herein.

25

136.    As a direct and proximate result of the negligent actions of the Defendants, decedent Ms. Grote suffered personal injury, including but not limited to pain and suffering and mental anguish prior to her death.  As a direct result of the negligent actions and omissions of the Defendants, Ms. Grote suffered a poor quality of life in the months preceding her death. Defendants' negligence and deliberate indifference directly contributed to the personal injury, pain and suffering, mental anguish, and death experienced by Ms. Grote.

137.    As a direct and proximate result of the Defendants' negligence and deliberate indifference, Plaintiff was deprived of decedent's valuable guidance, companionship, comfort, support, motherly love, and affection. Additionally, decedent suffered great physical pain and mental anguish through the time period of the Defendants' negligence deliberate indifference to her serious medical needs to her death.

138.    As a direct and proximate result of the Defendants' negligence and deliberate indifference in treating Ms. Grote's serious medical condition, Ms. Grote suffered loss of life. This also deprived her of future enjoyment of life and income.

139.    Plaintiff is entitled to recover punitive damages from the Defendants for their intentional, willful, and malicious acts and/or omissions which constituted gross negligence, recklessness, and deliberate indifference to Ms. Grote's medical needs in violation of her civil rights pursuant to 42 U.S.C. § 1983.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demands trial by jury on all of the above issues, costs herein incurred, fees where appropriate, and such relief as is deemed appropriate for the Court.

Dated December 15, 2023

Respectfully submitted,

*PEDROLI LAW, LLC*

Mark J. Pedroli, MBE 50787
*PEDROLI LAW, LLC*
7777 Bonhomme Ave, Suite 2100
Clayton, Missouri 63105
314.669.1817
314-789.7400 Fax

Mark@PedroliLaw.com