**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SHAINEY HARPOLE individually and on behalf of HOLLIE GROTE, deceased, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 2:23-CV-68-SPM |
| PIKE COUNTY, MISSOURI, et al., | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant Dr. Alan Weaver, M.D.'s Motion for Protective Order and Motion to Quash Notice of Deposition. (ECF No. 58). Plaintiff opposes the motion, and the motion has been fully briefed.

## I. Background

This case arises from the death of Plaintiff Shainey Harpole's mother, Hollie Grote, which occurred while Ms. Grote was confined to Pike County Jail in October of 2021. Plaintiff alleges that beginning in July 2021 and over the next several months, Ms. Grote exhibited severe symptoms of illness, including blurred vision, double vision, black spots in her vision, headaches, pain, dizziness, drooping eyes, memory loss, hot and cold flashes, periods of disorientation, and periods of inability to speak. She repeatedly sought treatment but did not receive proper treatment. She ultimately died of brain swelling caused by the growth of a treatable and noncancerous brain tumor. Plaintiff brings claims against Pike County, the Pike County Sheriff's Department, Stephen Korte (the sheriff of Pike County), Corina Halbach (a correctional officer at Pike County Jail), Tyler Trowbridge (a correctional officer at Pike County Jail), Advanced Correctional Healthcare, Inc. (which provided medical services to Pike County Jail), Dr. Alan Weaver (a physician at Pike

County Jail), and Debbie Welch (a nurse at Pike County Jail). Plaintiff alleges, *inter alia*, that Dr. Weaver and other defendants were deliberately indifferent to Ms. Grote's medical needs, in violation of the Eighth Amendment, and that Dr. Weaver and other defendants provided negligent medical care to Ms. Grote.

On March 4, 2025, Plaintiff served Dr. Weaver's counsel with a notice to take a videotaped deposition on April 18, 2025. On March 26, 2025, Dr. Weaver filed the instant motion, requesting a protective order precluding taking the deposition in any manner and an order quashing the notice thereof. He argues that he "has become medically incapacitated," that he suffers from several mental impairments, and that his conditions would be exacerbated by a deposition. that Dr. Weaver argues that allowing this deposition to go forward would impose an undue burden on him due to his mental capacity. ECF No. 58. To support this motion, he submits affidavits from his daughter (Alexandria Weaver) and his doctor (Pavel Svintozelky, M.D., A.P.).

In her affidavit, Alexandria Weaver states that she started noticing changes in her father's physical and mental condition in mid-2023, and that his mental state slowly began to deteriorate until he could not make decisions on his own, including eating, drinking, or taking his medication. He began seeing a doctor for these conditions in October 2023 and has been on medication since then. His family assumed he had "another stroke,"[1] but tests were inconclusive as to the cause of his decline. He suffers from paranoia, panic attacks, memory issues, agitation, and uncontrollable crying, and he will speak aggressively and scream. He lost all memory of his medical knowledge and is unable to discuss simple medical conditions and terms. He can never be alone and cannot pay bills, drive, or leave the house. His medical appointments are virtual because he cannot leave

[1] There is no information in the record about whether Dr. Weaver has ever had a stroke or when a stroke occurred.

the house. He must follow his routine in order to be stable; if something happens outside his daily routine, it can set him off, and it will take days or weeks to get him back on track. Recently, a repairman came to the house, and Dr. Weaver was aggressive the entire time and did not calm down for almost 24 hours. He is most upset when he is reminded of his past work and medical knowledge. She does not believe he is capable of being deposed. His behavior would be too unpredictable, it would be bad for his health, and it is very likely he will have one of his episodes because he will not be able to remember any details and cannot discuss medicine without getting frustrated with himself. Pl.'s Ex. A, ECF No. 59-1.

In his affidavit, Dr. Svintozelky states that he has been providing medical care to Dr. Weaver since April of 2024. Dr. Weaver suffers from generalized anxiety disorder, agoraphobia, and panic disorder. He experiences significant psychological distress that impairs his daily life. His agoraphobia makes him unable to leave his home and can result in panic attacks. His generalized anxiety disorder and panic disorder may cause him to get angry and throw fits when stressed or interrogated. Dr. Svintozelky states that "[m]ore likely than not to a reasonable degree of medical certainty, attending a deposition or otherwise participating in the court proceedings will cause significant adverse impacts to his overall health," and that "[a]s his physician, I believe it is best he avoid additional stressors that can trigger acute episodes." Pl's Ex. B, ECF No. 59-2.

Dr. Weaver also argues that all of his contact with or about Ms. Grote while she was in the Pike County Jail was documented in the chart, and Nurse Debbie Welch (whose deposition has been taken) was present at each visit, so Plaintiffs are not without a source of information about these events.

## II. Discussion

Under Fed. R. Civ. P. 26(c)(1), on motion by a party, "[t]he court may, for good cause,

issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . (A) forbidding the disclosure or discovery . . . ." "The party moving for the protective order has the burden to demonstrate good cause for issuance of the order." *Ezell v. Acosta, Inc.*, No. 4:16-CV-870 RLW, 2017 WL 6493166, at *2 (E.D. Mo. Dec. 15, 2017) (quoting *Buehrle v. City of O'Fallon, MO*, No. 4:10CV00509 AGF, 2011 WL 529922, at *2 (E.D. Mo. Feb. 8, 2011)). To show good cause, "the parties seeking protection must show that specific prejudice or harm will result if no protective order is granted." *Id.* (quoting *Buehrle*, 2017 WL 529922, at *2). In assessing whether good cause has been shown, courts apply a balancing test, "weighing the moving party's potential burdens against the opposing party's interest in the discovery at issue." *Yellow Brick Rd., LLC v. Koster*, No. 13-CV-2266 (JRT/LIB), 2014 WL 12932224, at *5 (D. Minn. Feb. 25, 2014).

"[P]rotective orders that prohibit depositions carry a heavy burden of proof, and 'should rarely be granted absent extraordinary circumstances.'" *Digeo, Inc. v. Audible, Inc.,* No. 4:06MC344-DJS, 2006 WL 2088201, at *2 (E.D. Mo. July 25, 2006) (quoting *Static Control Components, Inc. v. Darkprint Imaging*, 201 F.R.D. 431, 434 (M.D.N.C.2001)). "A court has discretion to quash a discovery request due to a witness' failing health, 'particularly where the information is believed to be obtainable from another source.'" *Richardson v. Sugg*, 220 F.R.D. 343, 346 (E.D. Ark. 2004) (quoting *Ahrens v. Ford Motor Co.*, 340 F.3d 1142, 1147 (10th Cir. 2003)).

The Court finds that Defendant Dr. Weaver has not met his heavy burden of showing good cause for a protective order precluding taking his deposition. The discovery at issue is at the heart of Plaintiff's case. This case requires development of the record regarding what Defendants knew about the seriousness of Ms. Grote's medical condition and what medical treatment they did

(or did not) provide as a result. *See, e.g., Dantzler v. Baldwin*, 133 F.4th 833, 843 (8th Cir. 2025) ("To prevail on a deliberate-indifference claim, [t]he plaintiff must show (1) an objectively serious medical need, and (2) that the defendant knew of and disregarded that need.") (internal quotation marks omitted). Plaintiff alleges that Dr. Weaver was Ms. Grote's physician and was responsible for overseeing and reviewing the care that was provided to her; that he reviewed and signed off on all of the visits between Ms. Grote and Defendant Nurse Welch; and that he provided another individual defendant instructions on how to treat Ms. Grote's complaints. ECF No. 1, at ¶ 39, 42, 88. Thus, Dr. Weaver's testimony would likely be highly relevant both to his own potential liability as a defendant and to the liability of the other defendants who may have conveyed information to him or received information from him. Neither his written notes nor the testimony of Nurse Welch is an adequate replacement for the testimony of Dr. Weaver himself.

The Court does not take lightly Dr. Weaver's medical conditions or the possibility that the stress of deposition may have some adverse impact on him. However, the Court finds that the burden on Dr. Weaver does not outweigh Plaintiff's very strong interest in obtaining Dr. Weaver's testimony. The Court finds it significant that much of the evidence offered in support of the hardship that would result from a deposition comes in the form of lay observations of his daughter rather than evidence from a medical professional. The affidavit from Dr. Svintozelky lacks specificity about the potential impacts on Dr. Weaver of being required to testify at a deposition. Dr. Svintozelky states that it is more likely than not that testifying "will cause significant adverse impacts to [Dr. Weaver's] overall health," but he does not specify what those impacts would be or whether they would be short-lived or long-lasting. He states that he believes "it is best [Dr. Weaver] avoid additional stressors that can trigger acute episodes," but he does not describe those episodes, indicate how severe they would be, or state whether they would have any lasting impact

on Dr. Weaver's health. The statement that Dr. Weaver's disorders "may" cause him to get angry and throw fits when stressed or interrogated is not sufficient to deprive Plaintiff of the benefit of the key testimony of a party and witness. Notably, Dr. Svintozelky does not state that Dr. Weaver is medically incapacitated, is unable to testify, or is incompetent to testify.[2]

The Court finds *Covey v. Wal-Mart Stores E., L.P.*, No. 16-01262-CV-W-ODS, 2018 WL 703286, at *1 (W.D. Mo. Feb. 2, 2018), instructive. In *Covey*, the plaintiff subpoenaed a witness who was an employee of the defendant to testify at trial. *Id.* Although the employee did not see the plaintiff's fall in the defendant's parking lot, he observed her physical condition immediately after the fall, alerted his co-workers to the incident, and completed a witness statement chronicling the events that occurred immediately after the fall. *Id.* The defendant sought to quash the trial subpoena of the employee witness based on his medical conditions. *Id.* The defendant offered testimony from the employee's former doctor that the witness could suffer a seizure if called to testify at a deposition or trial, that that testifying could be a danger to him given his past diagnosis of Bell's palsy, and that the witness would face stress if called as a witness. *Id*. The court denied the motion, stating, "While the Court is sensitive to Miller's medical condition, the Court finds the relevance

---

[2] The most specific problem described by Dr. Svintozelky is that Dr. Weaver's agoraphobia "makes him unable to leave his home and can result in panic attacks." Although this does not warrant a protective order completely precluding Plaintiff from being deposed, it may justify an order requiring the deposition be conducted through remote means or in Dr. Weaver's home. *See* Fed. R. Civ. P. 30(b)(4) ("The parties may stipulate—or the court may *on motion* order—that a deposition be taken by telephone or other remote means.") (emphasis added). No party has moved for such an order, so it would be premature for the Court to enter one. However, the parties are encouraged to discuss the possibility of taking Dr. Weaver's deposition remotely, or in his home, in light of his difficulties leaving the house. If the parties disagree about conducting Dr. Weaver's deposition remotely or in person but at his home, the party seeking an order requiring the deposition to be conducted remotely or in his home should file a motion. Upon receipt of such a motion, the Court will promptly set the matter for a discovery conference or hearing and will promptly rule on the motion at or after the conference or hearing.

and Plaintiff's need for Miller's testimony at trial outweighs the potential hardship placed on Miller by requiring him to testify at trial." *Id.* The court noted, *inter alia*, that the doctor did not know the last time Miller had had a seizure and that she testified that stress does not induce Bell's palsy but only may worsen its symptoms. *Id.* at *2. The court also emphasized the importance of the witness's testimony as an employee who has personal knowledge of the incident in question. *Id.* Here, the dangers to Dr. Weaver are less serious than the risk of seizures posed to the witness in *Covey*. Additionally, as a party in this case and as Ms. Grote's doctor at the time of the relevant events, Dr. Weaver's testimony is even more central to the issues in the case than was that of the witness in *Covey*.

The principal case relied on by Dr. Weaver, *Fonner v. Fairfax Cnty., VA*, 415 F.3d 325 (4th Cir. 2005), provides some support for Dr. Weaver's position but is distinguishable. In that case, the court found no abuse of discretion in the quashing of a subpoena for the testimony of a mentally retarded individual based in part on his psychologist's statement that the negative effects of the deposition would cause him to be "emotionally over-whelmed and traumatized," "would likely trigger a relapse of previous symptoms and problematic behaviors" and would "greatly interfere with [his] functioning in daily life." *Id.* at 331. Here, Dr. Weaver's doctor has not indicated that testifying at a deposition would trigger any relapse or would have any significant ongoing impact on Dr. Weaver's ability to function. Additionally, the court in *Fonner* did not address the importance of the individual's testimony to the case, which is a significant consideration here.

## III. Conclusion

For all of the above reasons, the Court finds that Plaintiff has not shown good cause for a protective order to preclude his deposition. Accordingly,

**IT IS HEREBY ORDERED** that Defendant Dr. Alan Weaver, M.D.'s Motion for Protective Order and Motion to Quash Notice of Deposition. (ECF No. 58) is **DENIED**.

SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this **22nd** day of **May, 2025.**